AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
10/18/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DTA___ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
10/18/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JD___ DEPUTY

**UNDER SEAL**

United States of America

v.

EDGAR NOE PALOMARES,
  Defendant.

Case No.  8:21-mj-00688-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 7, 2021 in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
_____
*Complainant's signature*

FARSHID HASHEMPOUR, TFO- FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  October 18, 2021

*Karen E. Scott* (signature)
*Judge's signature*

City and state:  Santa Ana, California

Hon Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

AUSA
Greg Staples
(x3535

**A F F I D A V I T**

I, Farshid Hashempour, being duly sworn, hereby declare and state as follows:

**INTRODUCTION**

1. I am a Detective with the Santa Ana Police Department ("SAPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI"). As a TFO with the FBI, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am assigned to the Orange County Violent Gang Task Force ("OCVGTF"). The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the SAPD, and detectives from the Anaheim Police Department. The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County. Prior to this assignment with the FBI, I was a SAPD Police Officer and have been so employed for approximately twenty years.

3. I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs. During my tenure as a Police Officer, as well as an FBI TFO, I have conducted and participated in numerous investigations of criminal activity, specifically including

narcotics trafficking and violent offenses committed by street gangs.

## PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint against and arrest warrant for EDGAR NOE PALOMARES ("PALOMARES") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A): Possession with Intent to Distribute Methamphetamine.

5. The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## SUMMARY OF PROBABLE CAUSE

6. On or about April 7, 2021, SAPD Officer Z. Jezulin and his partner Officer J. Babinski were working uniformed patrol when they conducted a patrol check at the Red Roof Inn, located in the city of Santa Ana, California. During their patrol check, the SAPD Officers observed a male subject, later identified as PALOMARES, slumped over in the passenger seat of a parked vehicle. The Officers exited their patrol to check on PALOMARES' well-being. Officer Jezulin contacted PALOMARES, who informed the Officer that he was alright. Officer Jezulin then

asked PALOMARES if he was on probation or parole. PALOMARES advised that he was on active parole. During the detention of PALOMARES, he told Officer Jezulin that he had narcotics on his person and in the vehicle. During this time, Officer Babinski conducted a records' check on PALOMARES and confirmed his parole status.

7. During the search of the vehicle, Officer Babinski found an off-white crystalline substance resembling methamphetamine inside of a portable speaker that was in a backpack. The backpack was near the right rear passenger seat, behind where PALOMARES was seated. Officer Babinski also found a digital scale on the rear floorboard as well as packaging material in the front and rear passenger compartments.

8. While speaking to PALOMARES, a female came down and identified herself as PALOMARES' girlfriend. The woman informed the Officers that PALOMARES was staying with her in room 261 of the Red Roof Inn. Based on his girlfriend's statements and PALOMARES' parole terms, SAPD Officers conducted a search of room 261. During the search of the room, a SAPD Officer found a substance believed to be methamphetamine inside of a small red backpack. Next to one of the beds in the room, Officer Jezulin found more of the same substance believed to be methamphetamine inside a small plastic purse that was located in a suitcase.

9. While seated in the back of a SAPD marked patrol unit, PALOMARES was advised of his Miranda Rights. PALOMARES acknowledged his rights and informed Officer Jezulin that the methamphetamine found in the vehicle and room 261 belonged to

him.  PALOMARES stated that his girlfriend did not know about the narcotics.  In a separate interview of PALOMARES' girlfriend, she denied knowledge of the narcotics found inside the vehicle or room 261.

10.   PALOMARES was transported to the Santa Ana Jail, where a substance believed to be methamphetamine was found in a cutout inside of PALOMARES' pants.  Within the same cutout, members of the Santa Ana Jail staff found a black tar substance believed to be heroin.  The off-white crystalline substance believed to be methamphetamine seized from the vehicle, motel room and PALOMARES' pants were later found to cumulatively weigh about 270 grams.  The black tar substance believed to be heroin weighed approximately 13 grams.

## STATEMENT OF PROBABLE CAUSE

11.   I have reviewed the police report prepared by SAPD Officer Jezulin covering the arrest of PALOMARES on April 7, 2021.  Based on my review of the reports and my conversations with Officer Jezulin and Officer Babinski, I have learned the following facts:

12.   On April 7, 2021, at about 11:42 a.m., SAPD Officer Jezulin and Officer Babinski were working uniformed patrol in a marked SAPD vehicle.  At this time, Officer Jezulin and Officer Babinski conducted a patrol check at the Red Roof Inn, located at 2600 North Main Street, Santa Ana, California.  This location was known to Officer Jezulin and Officer Babinski for a high

frequency of criminal activity to include narcotic sales, possession of firearms and stolen vehicles.

13.  While driving through the parking lot of the Red Roof Inn, Officer Jezulin observed a male Hispanic, later identified as PALOMARES, slumped over in the right front passenger's seat of a silver Honda Accord.  Believing that PALOMARES may have suffered a drug overdose, Officer Jezulin exited the patrol vehicle to check on PALOMARES' welfare.  Upon contact, PALOMARES informed Officer Jezulin that he was fine.  When Officer Jezulin asked PALOMARES if he was on probation or parole, PALOMARES informed him that he was currently on active parole for robbery.

14.  PALOMARES was removed from the vehicle and detained while Officer Babinski conducted a records check on PALOMARES. When Officer Jezulin asked PALOMARES if he had anything illegal on his person, PALOMARES responded that he had some "dope" on him and inside the vehicle.  After Officer Babinski received confirmation of PALOMARES' parole status, he began to search the silver Honda Accord in which was PALOMARES was a passenger. During the search of the vehicle, Officer Babinski located a large quantity of an off-white crystalline substance inside of a portable speaker, which was found inside of a backpack.  The backpack was discovered on top of several items on the rear right passenger's seat, behind where PALOMARES was seated. Officer Babinski also located a black Scale X digital scale on the floorboard directly behind PALOMARES' right front passenger seat.  Officer Babinski also found approximately eighteen small plastic baggies scattered between the front and back of the

vehicle. Based on his training and experience, Officer Babinski recognized these empty plastic baggies as packaging material consistent with those used for narcotic sales and distribution.

15. While speaking to PALOMARES, a female walked up to the Officers and identified herself as PALOMARES' girlfriend, Clytie Kopperman. Both PALOMARES and Kopperman told the Officers that PALOMOARES was staying with Kopperman in room 261 at the Red Roof Inn. Kopperman informed the Officers that the door to room 261 should still be open since she did not close it when she left.

16. Additional SAPD Officers arrived at the scene to assist Officer Jezulin and Officer Babinski with their investigation. Based on PALOMARES confirmed parole status and his statement that he was staying in the room 261, SAPD Officers conducted a parole search of the motel room. During the search of the room, Officer B. Duarte found a small red backpack, which contained approximately 81 grams of an off-white crystalline substance believed to be methamphetamine. The backpack was located underneath the second bed furthest from the front door of room 261. Officer Jezulin located a suitcase near the second bed, which contained a small plastic purse that had approximately 22 grams of an off-white crystalline substance also believed to be methamphetamine. This purse also contained a black WeighMax digital scale.

17. PALOMARES was seated to the rear of the marked SAPD unit, where he was read his Miranda Rights by Officer Jezulin. PALOMARES acknowledged his rights and initially told Officer

6

Jezulin that the methamphetamine found in the speaker in the Honda Accord and in room 261 belonged to him.  PALOMARES told Officer Jezulin that Kopperman was not aware of the methamphetamine.  Kopperman, who was being detained in a separate patrol unit, was also read her Miranda Rights at the scene.  Kopperman acknowledged her rights and told Officer Jezulin that she did not know about the narcotics found in vehicle or the motel room.  The Honda Accord was released to Kopperman while PALOMARES was arrested and transported to the Santa Ana Jail.

    18.  At the jail, Officer Jezulin reread PALOMARES his Miranda Rights, which he verbally acknowledged.  During the subsequent interview, PALOMARES stated that Kopperman was his girlfriend and he had been staying with her in room 261 for a couple of nights.  PALOMARES admitted to using methamphetamine since he was 15 years old and claimed that he uses approximately 10 grams of methamphetamine a day.  PALOMARES told Officer Jezulin that he works at a recycling center and makes approximately $360 a week, while presumably spending much more to support his methamphetamine habit.  When Officer Jezulin explained to PALOMARES that he was spending more on methamphetamine than he was making, PALOMARES stated that he has been in a sexual relationship with his female boss, who helps him support his habit.  Despite the presence of packaging material and digital scales, PALOMARES denied selling methamphetamine and told Officer Jezulin that he buys large quantities of methamphetamine because it is cheaper.

19. After his interview at the jail, PALOMARES was searched by Santa Ana Jail Correctional Officers who found a small plastic bag of an off-white crystalline substance believed to be methamphetamine stuffed inside of a cutout inside the inner portion of PALOMARES' pants. Correctional Staff also found a small plastic bag containing a black tar substance believed to be heroin underneath the other plastic bag within the same cutout.

20. The separate packages of the substance believed to be methamphetamine that were found during the course of this investigation weighed approximately 270 grams. The small plastic bag containing the black tar substance believed to heroin was found to weigh approximately 13 grams. The narcotics seized during this investigation were later obtained from the Santa Ana Police Department and sent to the DEA Southwest Lab for quantitative and qualitative analysis. DEA Southwest Lab analysis of the off-white crystalline substance determined that it was methamphetamine with a substance purity of 99%. The lab concluded that the amount of pure methamphetamine was approximately 244 grams. The DEA Southwest Lab analysis of the black tar substance determine that it was heroin with a net weight of 1.45 grams.

21. Based on my training and experience, which includes observing methamphetamine, I submit that there is probable cause to believe that the narcotics taken during the search of PALOMARES' vehicle and motel room are in fact methamphetamine.

Additionally, 244 grams of methamphetamine are distribution amounts based on my training and experience.

## CONCLUSION

7.  For all the reasons described above, there is probable cause to believe that PALOMARES has committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A): Possession with Intent to Distribute Methamphetamine.

/s/
FARSHID HASHEMPOUR
Task Force Officer, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of October 2021.

*Karen E. Scott*

UNITED STATES MAGISTRATE JUDGE

9